

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 522 | **DATE** | 6/4/2004 |
| **CASE TITLE** | Torres vs. Briley | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in the Memorandum Opinion and Order, petitioner's petition for habeas corpus relief is denied and the Court concludes that the petitioner is not entitled to habeas relief. All other pending motions are denied as moot. Case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | 2 | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | JUN 0 7 2004 | |
| | Notified counsel by telephone. | U.S. DISTRICT COURT CLERK | | date docketed | |
| | Docketing to mail notices. | | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | 2004 JUN -4 PM 3:05 | | | |
| | Copy to judge/magistrate judge. | | | 6/4/2004 date mailed notice | |
| MD | courtroom deputy's initials | FILED Date/time received in central Clerk's Office | | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| United States of America<br>ex rel. EDGAR TORRES (#B-03292),<br><br>Petitioner,<br><br>vs.<br><br>KENNETH BRILEY,<br>Warden,<br>Stateville Correctional Center,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **DOCKETED**<br><br>JUN 0 7 2004<br><br>No. 03 C 0522<br>Judge Joan H. Lefkow |

## MEMORANDUM OPINION AND ORDER

In his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, petitioner Edgar Torres ("Torres") challenges his conviction for first degree murder entered in the Circuit Court of Cook County, Illinois. For the reasons stated below, his petition is denied.

## HABEAS STANDARD

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this court must deny Torres' petition for a writ of habeas corpus with respect to any claim adjudicated on the merits in the state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d); *Price v. Vincent*, 538 U.S. 634 (2003). A state court's decision is contrary to clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme Court] and nevertheless arrives at a result different from [it]." *Williams* v. *Taylor*, 529 U.S. 362, 405-06 (2000).

A state court's decision is an unreasonable application of clearly established Supreme Court law "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of a particular prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. In order for a state court decision to be considered "unreasonable" under this standard it must be more than incorrect, it must lie "well outside the boundaries of permissible differences of opinion." *Hardaway* v. *Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Schultz* v. *Page*, 313 F.3d 1010, 1015 (7th Cir. 2002) ("The state court decision is reasonable if it is minimally consistent with the facts and circumstances of the case.") (internal citations and quotations omitted).

## BACKGROUND

### A. Procedural History

Following a bench trial, Torres was convicted in the Circuit Court of Cook County of first degree murder. He received a sixty-year sentence to be served consecutively to a thirty-year sentence received from a prior conviction. Torres appealed to the Illinois Appellate Court arguing (1) the evidence was insufficient to support the finding that he was guilty beyond a reasonable doubt; (2) the trial court incorrectly denied his motion to quash his arrest and suppress identification evidence; and (3) his sentence was excessive. The Illinois Appellate Court

2

affirmed his conviction and sentence. *People* v. *Torres*, No. 1-98-4536 (Ill. App. Ct. Aug. 14, 2001) (Resp. Ex. D.)

Torres filed a *pro se* petition for rehearing in the Appellate Court. He argued his first two claims but not that his sentence was excessive. The Illinois Appellate Court denied the petition. *People* v. *Torres*, No. 1-98-4536 (Ill. App. Ct. Oct. 11, 2001) (Resp. Ex. F.) Torres then filed a *pro se* petition for leave to appeal to the Illinois Supreme Court in which he raised the three issues that he presented in his initial appeal to the Illinois Appellate Court. (Resp. Ex. G.) The Illinois Supreme Court denied Torres' petition on February 6, 2002. *People* v. *Torres*, No. 92743 (Ill. 2002) (Resp. Ex. H.) Torres filed this habeas petition on January 22, 2003. Because his petition was filed within one year after the conclusion of his direct review in the Illinois courts, this court has jurisdiction to consider the habeas petition. *See* 28 U.S.C. § 2244(d)(1)(A); *Gray* v. *Briley*, 305 F.3d 777, 778 (7th Cir. 2002).

**B.  Facts**

When considering a habeas petition, the court must presume that the state courts' factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Todd* v. *Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). Torres has not presented clear and convincing evidence to rebut this presumption. Therefore, the court adopts the Illinois Appellate Court's recitation of facts in *People* v. *Torres*, No 1-98-4536 (Ill. App. Ct. Aug. 14, 2001) (Resp. Ex. D.)

Torres and the victim, Vincent Cox ("Cox"), were inmates at the Cook County Jail in 1995. Officer Clark Eichman, a Cook County Sheriff Correctional Officer, testified that on May 27, 1995 he was watching tiers A and B4 in Division 1 of the Cook County Jail. On tier A4

3

he observed inmates gather in the halls near cells 2, 3, 18, and 19 and yell, "Folks against the People." He testified that the "People" and the "Folks" are the two umbrella groups of gangs in Chicago. At the time of the offense, Torres was a part of the Spanish Cobra gang, a faction of the Folks.

Angel Pagan ("Pagan"), former cellmate of Torres and a member of the Spanish Cobra gang, testified that he witnessed Torres, who was carrying a homemade knife, and another inmate, Duane Calhoun, chasing Vincent Cox into cell 18. Pagan lost sight of Torres while he was in cell 18.

Officer Eichman testified that he saw several inmates begin to making stabbing motions at each other, and he heard loud screaming which prompted him to make a call announcing that a fight was in progress on his tier. Officer Eichman could not clearly see who was fighting. When he heard an inmate screaming for help, he proceeded onto the catwalk of tier A4. He heard inmate Edgar Hill screaming, "Get some help here immediately." When Officer Eichman reached cell 4-5, he observed that an inmate was bleeding profusely and screaming for help.

Officer Eichman then called for further help and arranged for medical attention. When he and two other officers entered cell 18 they discovered Cox laying in a pool of blood. The officers conducted cell searches but did not recover any weapons or bloody clothing. Cox died as a result of the beating and stabbing.

Pagan testified that when Torres entered their joint cell, he saw that Torres had blood on his pants, his hands, and on a homemade knife he was carrying. Pagan testified that after Torres entered their cell, he removed the pants he was wearing, ripped them into pieces and flushed

4

them down the toilet. Torres also washed the blood off his hands and the knife. Torres and the other inmates involved threw their knives into a vent.

Torres and five other inmates were arrested for the death of Cox. All were tried together in a bench trial. Torres made motions to quash his arrest and suppress pre-trial identification evidence. At the hearing on the motions, Detective Joseph Walsh testified that on June 1, 1995, he, his partner, and Assistant State's Attorney Joe Alesia conducted three lineups at Cook County Jail. Torres was included only in one such lineup and was selected. Detective Richard Chernikovich testified that on June 6, 1995 he met with Pagan and showed him approximately thirty black and white photographs of inmates from tier A4, each marked with the inmate's name. Pagan pointed out approximately ten individuals who may have been involved in the murder, including Torres. Pagan knew Torres a month before the incident and was his cellmate for one day before the murder. After hearing all of the evidence, the trial court denied both the motion to suppress evidence and the motion to suppress identification. The judge found that the identification procedures did not violate any of Torres' constitutional rights.

After the bench trial Torres was found guilty. Four of his co-defendants, Demetrius Green, Reginald Guice, Marvin Hicks and Robert Munoz, had their motions for directed findings granted after the prosecution's case. The only other remaining co-defendant, Duane Calhoun, was found not guilty by the trial court at the conclusion of the evidence.

## DISCUSSION

Torres' petition for habeas relief contains two claims: (1) the evidence presented at trial was insufficient to support his conviction, in violation of his Fourteenth Amendment right to due process of law; and (2) the identification evidence obtained by suggestive procedures was

admitted at trial also in violation of his Fourteenth Amendment right to due process of law. Because Torres raised his claims for relief before all three levels of the Illinois court system during his trial and direct appeal, he has exhausted his administrative remedies under 28 U.S.C. § 2254(b)(1)(A). The court, therefore, examines the merits of his claims.

A. **Insufficient Evidence**

Torres argues that he was denied Due Process because the evidence introduced at his trial was insufficient to prove his guilt beyond a reasonable doubt. According to Torres, the evidence was insufficient because the trial judge relied on the same evidence to convict him that the judge concluded was insufficient to convict his co-defendants. Torres claims that the evidence introduced by the prosecution was circumstantial, unreliable, and based on witnesses who gave inconsistent accounts of the offense. Specifically, Torres says that Pagan's testimony cannot be a rational basis for his murder conviction.

The Due Process Clause is violated when a defendant is convicted at trial despite the fact that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson* v. *Virginia*, 443 U.S. 307, 324 (1979). In applying this standard, the reviewing court must give deference to the trier of fact and will not reweigh the evidence, make credibility determinations, or substitute judgments. *See Ford* v. *Ahitow*, 104 F.3d 926, 938 (7th Cir. 1997); *United States* v. *Mejia*, 909 F.2d 242, 245 (7th Cir. 1990). Torres claims that the evidence presented against him was unreliable because it was based on the testimony of three "jail house snitches." However, "[t]he *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera* v. *Collins*, 506 U.S. 390, 402 (1993) (emphasis in original).

6

Torres raised this claim on direct review, and the Illinois Appellate Court affirmed his conviction. The appellate court noted that the trial court found three pieces of evidence persuasive in convicting Torres: (1) the in-court testimony of Pagan; (2) a prior written statement by Edgar Hill; and (3) a prior written statement by DeAngelo Horton.

Pagan, who was Torres' cellmate at the time of the murder in question, testified at trial that he saw Torres and Calhoun chasing Cox into cell 18. Pagan further testified that when Torres entered their joint cell, he had blood on his pants, hands, and on the shank he was holding. Pagan stated that after Torres entered their cell he removed the pants he was wearing, ripped them up, and flushed the pieces down the toilet. Pagan also observed Torres washing blood off of his hands and the shank.

As for Hill, he initially refused to testify at trial. He stepped down from the witness stand but was later recalled to testify again. At this time his testimony was that he did not remember anything that happened at or around the time of the May 1995 killing. Similarly, Horton testified that while he remembered that Cox had died, he did not see him get stabbed. Thereafter, Assistant State's Attorney Joe Alesia was called to the stand. Alesia read handwritten statements previously given by Hill and Horton.[1] Hill had previously indicated that he had seen Cox being beaten with a broom stick and stabbed with shanks being held by Reginald Guice, Robert Munoz

---

[1] These statements were admitted pursuant to 725 ILCS 5/115-10.1. That statute provides, in pertinent part, that a statement made by a witness is not made inadmissible by the hearsay rule if

    (a) the statement is inconsistent with his testimony at the hearing or trial, and
    (b) the witness is subject to cross examination concerning the statement; and
    (c) the statement--
\*\*\*
    (2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and
    (A) the statement is proved to have been written or signed by the witness . . . .

7

and Torres. Horton had previously given a statement stating that he had seen Hicks, Green, Guice, Munoz and Torres pushing Cox into a cell and all were carrying large knives.

The Illinois Appellate Court evaluated the sufficiency of the evidence in Torres' case under the standard in *Jackson* and explicitly deferred to the factual determinations made by the trial judge because he was in a position to hear the evidence and observe the witnesses. The court recognized that the trial judge was persuaded by Pagan's testimony and the two written statements made by Hill and Horton. Moreover, the Illinois Appellate Court recognized that the trial court was in a position to disbelieve Hill and Horton's testimony at trial and to credit their pretrial statements. The Illinois Appellate Court also acknowledged that Pagan's testimony had briefly changed when he spoke with defense counsel before trial but, once again, deferred to the trial court's belief as to why Pagan had changed his version of the events.

Viewing the evidence in the light most favorable to the prosecution, the Illinois Appellate Court found that "any rational trier of fact could have found that the essential elements of the crime had been proven beyond a reasonable doubt and that the defendant was one of the offenders in this case." *People* v. *Torres*, No 1-98-4536, 19-20 (Ill. App. Ct. Aug. 14, 2001). That decision was not contrary to or an unreasonable application of the *Jackson* standard. This claim, therefore, is denied.[2]

---

[2]As for Torres' claim that the trial court, essentially, acquitted the other co-defendants while finding him guilty based on the same evidence, the court disagrees. In denying the motion for a directed finding as to Torres, the trial court noted that there was the statement of Pagan, who as the judge noted was Torres' cellmate and "seemed to have more detailed awareness of Torres' actions, alleged actions during this incident than anybody else." (Tr. Rec. at I-7.) The court also noted that the out-of-court statements of Hill and Horton further implicated Torres. The court found that a directed finding was appropriate in favor of co-defendants Hicks, Guice, Green and Munoz because Pagan never implicated or even placed these other four defendants at the crime scene. (Tr. Rec. at I-8, I-13.) Moreover, the court noted that the out-of-court statements of Hill and Horton, standing alone, were not sworn testimony sufficient for conviction. (Tr. Rec. I-14, I-15.) And as for Calhoun, after denying his motion for a
(continued...)

8

## B. Improper Identification

Torres argues that he was denied due process of law under the Fourteenth Amendment because the trial court refused to suppress pre-trial photo identification evidence. Torres claims that Pagan's pre-trial identification was obtained by suggestive procedures because Pagan identified approximately ten suspects, including Torres, using photos that displayed the inmates' names.

The record is not entirely clear on this claim. It appears that, in addition to the photo array described above, Torres was placed in a lineup presented to Hill and Horton. The Illinois Appellate Court's opinion describes this lineup involving Torres but fails to state whether Torres was identified by Hill and/or Horton. In reviewing the trial court's denial of Torres' motion to suppress pretrial identification evidence, the Illinois Appellate Court focused almost entirely on this lineup identification by Hill and Horton and not on Torres' complaint of the photo arrangement presented to Pagan. In his answer, respondent concedes that Torres was identified by both Hill and Horton through a lineup, but submits that Torres' petition here focuses only on the photo identification by Pagan. Although Torres' petition does focus on the photo array and not the lineup, Torres does mention being subjected to a suggestive lineup. Liberally construing

---

²(...continued)
directed verdict, the court acquitted him on grounds that, while Pagan incriminated Calhoun, Hill and Horton's out-of-court statements did not. (Tr. Rec. J-36, J-37.) Finally, in distinguishing Torres, the judge once again found that Pagan "seemed to know Torres and his actions better than anyone else's and seemed to keep track of his cellmate closer during–particularly after the murder." (Tr. Rec. J-37.) The court also noted that in contrast to Calhoun, Hill and Horton's out-of-court statements incriminated Torres in the murder. (*Id.*) Thus, the court noted that "there are then three incriminating witnesses as to Edgar Torres, and it convinces me beyond a reasonable doubt Torres is accountable for this murder." (*Id.*) Although it is possible that one or more co-defendants were in fact guilty, thus "wrongly" acquitted, this failure of justice has no bearing on whether the evidence against Torres was sufficient to convict.

his *pro se* petition the court will consider whether the June 1, 1995 lineup involving Torres was unconstitutional.

The Due Process Clause is violated when a conviction is based on eyewitness identification that "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons* v. *United States*, 390 US 377, 384 (1968). Initially, if the procedure was unnecessarily suggestive, the court must consider whether under the totality of the circumstances the identification was reliable. *Neil* v. *Biggers*, 409 U.S. 188, 199 (1972). Only if the procedure was impermissibly suggestive and unreliable would there be a Due Process violation. *See id.*

Concerning Torres' lineup identification, the Illinois Appellate Court held that Torres failed to demonstrate that the lineup was improperly suggestive due to age, height, weight, dress, complexion and other distinguishing characteristics of the participants. Moreover, the Illinois Appellate Court further noted that Torres had failed to establish (1) that the various witnesses were allowed to make their identification of the accused in the presence of each other or were allowed to discuss their identification of the defendant during the identification process; (2) that the police failed to take the reasonable and necessary precautions to prevent an accidental witness-suspect confrontation; or (3) that the emotional or physical condition of the witness was such as to impair his ability to make a fair and rational identification of the offender.

Furthermore, the trial judge, who heard the evidence at the motion to suppress and was presented with the photographs of the lineup, stated as follows:

> Secondly, after viewing the lineups, I would also say they could have been better, but, these three lineups are better than most. They do pass the constitutional mustard *[sic]*. They do satisfy basic due process, and the grounds of fairness, and

> their constitution and composition are not suggestive in my mind to bring about a mis-identification, to unfairly and unconstitutionally single out any of the petitioners.
>
> So, these lineups could have been better, but they are certainly in my judgment adequate and not violative of any of the defendants' constitutional rights to a fair identification procedure.

(Tr. Rec. at A-102.) After reviewing the evidence in this case the court cannot call the Illinois Appellate Court's decision that the lineup was not suggestive unreasonable. To a large degree the Illinois Appellate Court deferred to the trial court's findings of fact. The trial court was in the best position to gauge the suggestiveness of the lineups because it was presented with the actual photographs of the lineups themselves. Thus, Torres' claim for relief on this ground is denied.

As for the photo array presented to Pagan, while the Illinois Appellate Court first stated that the photo array was not unnecessarily suggestive, it nevertheless did consider the five factors articulated in *Neil* for determining reliability of an identification procedure. Those factors include: "The opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* at 199-200. The court also considered the witness' relationship with the suspect prior to the crime. Applying these factors, the Illinois Appellate Court determined that the trial court did not abuse its discretion by denying Torres' motion.

The Illinois Appellate Court's decision was reasonable for two principal reasons. First, Pagan knew both Torres and Cox prior to the date of the murder. Indeed, Torres served as Pagan's cellmate immediately prior to the murder, even if it was for only one day. The names on the photographs could not have been impermissibly suggestive to Pagan since he was familiar

11

with Torres' appearance. The presence or absence of a name on Torres' picture would not change the fact that ten days after the murder Pagan would have recognized Torres in a photograph. Second, because the names were written on all of the pictures, Torres' photograph did not stand out from the array of the thirty pictures Pagan viewed. Presumably Torres knew the names of many of the other inmates also. Therefore, the photographs that Pagan viewed were neither impermissibly suggestive nor unreliable. Accordingly, the Illinois Appellate Court's decision was not contrary to or an unreasonable application of the law as articulated by the Supreme Court in *Neil*. Torres' claim, therefore, is denied.

## CONCLUSION

For the reasons stated above, the court concludes that Torres is not entitled to habeas relief. All other pending motions are denied as moot. This case is terminated.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: June 4, 2004